**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| BRIAN FIELDER, | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 09-881 |
| vs. | ) |
| | ) Judge Nora Barry Fischer/ |
| JUDGE FRANCIS J. FORNELLI; JUDGE | ) U.S. Magistrate Judge Maureen P. Kelly |
| JOHN C. REED; JUDGE THOMAS R. | ) |
| DOBSON; ROBERT G. KOCHEMS, | ) |
| District Attorney; RYAN BONNER, | ) |
| Assistant District Attorney; MR. GILL, | ) |
| Warden of Mercer County Prison; MRS. | ) |
| CRAIG, Deputy Warden of Mercer County | ) |
| Prison; MR. MORGANSTERN, Deputy | ) |
| Warden of Mercer County Prison; | ) |
| SUPERINTENDENT MICHAEL HARLOW; | ) |
| FRED RUFO, Superintendent Deputy; MR. | ) |
| MAHLMEISTER, Superintendent Deputy; and | ) |
| SECRETARY JEFFREY A. BEARD, Ph.D., | ) |
| | ) |
| Defendants. | ) Re: ECF Nos. [45]; [47] & [49] |

## REPORT AND RECOMMENDATION

### I.   RECOMMENDATION

It is respectfully recommended that the Motion to Dismiss of the Judicial Defendants,

ECF No. [47], be granted and that the Operative Complaint be dismissed against the Judicial

Defendants with prejudice.  It is further recommended that the Motion to Dismiss of the Mercer

County Defendants, ECF No. [49], be granted and that the Operative Complaint be dismissed as

against them with prejudice.  It is also recommended that the Motion to Dismiss of the

Department of Corrections Defendants, ECF No. [45], be granted and the Operative Complaint

be dismissed as against them with prejudice.

## II.    REPORT

Brian Thomas Fiedler, Jr., ("Plaintiff") initiated this civil rights suit pursuant to 42 U.S.C. § 1983, on July 7, 2009, while he was housed at the State Correctional Institution in Mercer ("SCI-Mercer"), complaining of conditions at the Mercer County Jail ("MCJ") and also at SCI-Mercer.   Currently Plaintiff is housed at the State Correctional Institution in Albion ("SCI-Albion").   Plaintiff named three distinct groups of defendants.   First, he named the Honorable Francis J. Fornelli, the Honorable John C. Reed and the Honorable Thomas R. Dobson, all of whom are sitting Judges of the Court of Common Pleas of Mercer County, (collectively, "the Judicial Defendants").   Second, Plaintiff named five Mercer County officials as follows:   Robert G. Kochems, District Attorney; Ryan Bonner, Assistant District Attorney, Mr. Gill, Warden of MCJ; Mrs. Craig, Deputy Warden of MCJ; and Mr. Morganstern, Deputy Warden, (collectively, "the Mercer County Defendants").   Third, Plaintiff named four Pennsylvania Department of Corrections ("DOC") officials: Jeffrey Beard, DOC Secretary ("Beard"); Michael Harlow, Superintendent of SCI-Mercer ("Harlow"); Fred Rufo, Deputy Superintendent of SCI-Mercer ("Rufo"); Mr. Mahlmeister, Deputy Superintendent of SC-Mercer ("Mahlmeister") (collectively, "the DOC Defendants").

Because Plaintiff sues Judges Reed and Dobson for their roles in dealing with Plaintiff as judges, they are entitled to absolute judicial immunity.   Insofar as Plaintiff is suing Judge Fornelli for his role on the Board of MCJ, he has failed to allege any personal involvement of Judge Fornelli in any constitutional tort.   Hence, the Complaint must be dismissed as against Judge Fornelli.   Because Plaintiff sues District Attorney Kochems and Assistant District Attorney Bonner for their roles in prosecuting him, they are entitled to absolute prosecutorial immunity,

2

which Plaintiff now concedes, ECF No. [53] at 1, ¶ 1. As a result, the Complaint must be dismissed as to these two Defendants for failure to state a claim upon which relief can be granted. As to the remaining three Mercer County Defendants, i.e., Gill, Craig and Morganstern, Plaintiff has failed to sufficiently allege that they were involved in the violation of any of his rights and so the Complaint must be dismissed against them. The same rationale applies to Plaintiff's claims against the DOC Defendants, against whom Plaintiff made no specific allegations of wrongdoing.

**A. Procedural History**

Plaintiff, proceeding *pro se* and *in forma pauperis* ("IFP") initiated this civil rights action in July 2009. The original Complaint was formally docketed on November 3, 2009. ECF No. [5]. Plaintiff then filed, as of right, an amended complaint which he captioned as "Plaintiff's Second Amended Complaint," ECF No. [10], even though it is Plaintiff's First Amended Complaint. We shall refer to the amended complaint as "the Operative Complaint." By way of relief, Plaintiff seeks damages "and such additional relief as the court may deem just and proper[.]" ECF No. [10] at 8.

The DOC Defendants filed a Motion to Dismiss the Operative Complaint, ECF No. [45], and a Brief in Support. ECF No. [46]. The Judicial Defendants filed a Motion to Dismiss the Operative Complaint, ECF No. [47], and a Brief in Support. ECF No. [48]. The Mercer County Defendants filed a Motion to Dismiss the Operative Complaint, ECF No. [49], and a Brief in Support. ECF No. [50].

Plaintiff filed a Response to the Judicial Defendants' Motion to Dismiss.  ECF No. [52].

Plaintiff also filed a Response to the Mercer County Defendants' Motion to Dismiss.  ECF No.

[53].  He did not file a response to the DOC Defendants' Motion To Dismiss.

In June 2011, this case was reassigned to the undersigned.  ECF No. [54].

**B.  Standard of Review**

As the United States Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S.

544 (2007), a complaint may properly be dismissed pursuant to Fed. R. Civ. P. 12 (b)(6) if it does

not allege "enough facts to state a claim to relief that is plausible on its face." Id. at 570

(rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46

(1957)). See also Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009).  Under this standard, the court must,

as a general rule, accept as true all factual allegations of the complaint and all reasonable

inferences must be viewed in the light most favorable to the plaintiff.  Angelastro v. Prudential-

Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir. 1985).  Nevertheless, under the 12(b)(6)

standard, a "court need not . . . accept as true allegations that contradict matters properly subject

to judicial notice or by exhibit." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir.

2001), *amended by,* 275 F.3d 1187 (9th Cir. 2001).  Nor must a court accept inferences drawn by

the plaintiff if they are unsupported by the facts as set forth in the complaint.  See California Pub.

Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v.

Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997)).  A court also need not accept

legal conclusions set forth as factual allegations.  Twombly, 550 U.S. at 555 (citing Papasan v.

Allain, 478 U.S. 265, 286 (1986)).

In addition, because Plaintiff is a prisoner proceeding IFP, who seeks redress from a governmental entity or an employee of a governmental entity, and who has filed a civil action concerning the conditions of confinement, the screening provisions of 28 U.S.C. §§ 1915(e) and 1915A and 28 U.S.C. § 1997e(c) apply. Pursuant to these screening provisions, a court is obliged to *sua sponte* dismiss complaints that are frivolous, malicious or that fail to state a claim upon which relief can be granted. Moreover, if there is a ground for dismissal, which was not relied upon by a defendant in a motion to dismiss, or, if a defendant did not even file a motion to dismiss, the court may nonetheless dismiss the case or claim *sua sponte*, pursuant to the screening provisions of the PLRA. See <u>Lopez v. Smith</u>, 203 F.3d 1122, 1126 n.6 (9th Cir. 2000); <u>Dare v. U.S.</u>, CIV.A.06-115E, 2007 WL 1811198, at *4 (W.D.Pa. June 21, 2007), *aff'd*, 264 F.App'x 183 (3d Cir. 2008).

**C.  Discussion**

1.  The Judicial Defendants

The sole factual allegations against the Judicial Defendants in the Operative Complaint are as follows:

> 4.  Defendant Francis J. Fornelli is a Judge who is also on the Board that oversees the Mercer County Jail[.]
> 5.  Defendant Jhon [sic] C. Reed is a judge that oversees my case in Mercer[.]
> 6.  Defendant Thomas R. Dobson is a judge that oversees my case in Mercer[.].
> . . . .
> 25.  The Next day[,] January 3, 2008, Defendant Warden Gill, Deputy Warden Craig, and Deputy Warden Morganstern, as well as the Mercer County jail Board ordered that Plaintiff be restrained with handcuffs and shackles any time he leaves his cell . . . .
> 
> . . . .
> 
> 75.  I filed a writ of habeas corpus [.]  Judge Reed said I need to redo [sic]

it [and] told me that I only have two weeks to do so or I would waive my right to it.[.]

      . . . .

    77.  At the begin[n]ing of my time[,] Defendant Judge Thomas R. Dobson showed sever[e] prejudice to me in the Court room by stating that I am going upstate not if I[']m convicted I[']m going upstate (just I[']m going upstate)[.]

ECF No. [10] at ¶ 4 to 77.

        a.  Claims as to Judges Reed and Dobson

Judges Reed and Dobson, as members of the judiciary are entitled to have the claims against them dismissed on the basis of absolute judicial immunity because all of the allegations against them show Plaintiff dealt with them solely in their judicial capacities. The doctrine of judicial immunity bars civil suits for monetary damages against judicial officers who are acting in their judicial capacity, i.e., whose challenged actions are taken in the course of their judicial activities and whose actions are not lacking jurisdiction. See Mireles v. Waco, 502 U.S. 9, 11-12 (1991) (per curiam). Even allegations of procedural irregularities, failures to comply with the law or acting in bad faith are not sufficient to overcome absolute judicial immunity. Figueroa v. Blackburn, 208 F.3d 435 (3d Cir. 2000) (failure to comply with state court rule did not strip judge of immunity). Not even allegations that a judge took an otherwise judicial action in bad faith or maliciously is sufficient to pierce judicial immunity. Mireles, 502 U.S. at 11 ("judicial immunity is not overcome by allegations of bad faith or malice"). Moreover, the doctrine of judicial immunity renders a judge not only immune from damages but also immune from suit. Id. at 11 ("judicial immunity is an immunity from suit, not just from ultimate assessment of damages.").

6

In this case, the Operative Complaint makes clear that the actions taken by Judges Reed (in giving Plaintiff a deadline to re-file his habeas petition) and Dobson (in admonishing Plaintiff he was going to be going to state prison) and complained of by the Plaintiff are taken in their judicial capacity. Because Judges Reed and Dobson enjoy absolute judicial immunity, they must be dismissed. Moreover, we note that Plaintiff now concedes in his Response that Judges Reed and Dobson are entitled to absolute judicial immunity and should be removed as party-defendants. ECF No. [52] at 2 ("Plaintiff respectfully requests that this Court . . . remove Thomas R. Dobson and John C. Reed as Defendants[.]").

b. Claims as to Judge Fornelli

i. Use of Restraints by MCJ Board

To the extent that Plaintiff complains about Judge Fornelli, the sole claim against him in the Operative Complaint appears to be that the MCJ Board approved the use of restraints on Plaintiff whenever he left his cell. As stated by Plaintiff in the Operative Complaint, this requirement that Plaintiff be placed in handcuffs and shackles whenever he left his cell was caused by the fact that on January 2, 2008, Plaintiff engaged in an altercation with MCJ corrections officers. ECF No. [10] at 3, ¶¶ 18 to 25. As a consequence Plaintiff was charged with assault. Id., at ¶ 24. The Court takes judicial notice of the fact that in connection with an incident occurring on January 2, 2008, Plaintiff was charged with various crimes including simple assault, harassment, resisting arrest/other law enforcement, disorderly conduct and aggravated assault. Plaintiff pleaded guilty to resisting arrest /other law enforcement, 18 Pa.C.S.

§ 5104,[1] with the other charges being *nolle prossed*.[2]  That Plaintiff was ordered to be shackled in response to his behavior of resisting law enforcement officials, i.e., the corrections officers, violates none of Plaintiff's constitutional rights.

Plaintiff alleges that at the time of the January 2, 2008 incident, he was a pre-trial detainee in the MCJ.  Hence, the relevant inquiry, in determining whether shackling and handcuffing Plaintiff when he was outside his cell, is the substantive due process analysis set forth in  Bell v. Wolfish, 441 U.S. 520 (1979) (applying Fifth Amendment due process clause to federal pre-trial detainees) and Hubbard v. Taylor, 399 F.3d 150 (3d Cir. 2005) (applying Bell standard under Fourteenth Amendment due process clause to state pre-trial detainees).[3]

In Bell, the United States Supreme Court held that the:

> proper inquiry is whether those [challenged] conditions [of confinement] amount to punishment prior to an adjudication of guilt in accordance with law. For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law.

---

[1]  18 Pa.C.S. § 5104 provides as follows:

> A person commits a misdemeanor of the second degree if, with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty, the person creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance.

[2]  The Court takes judicial notice of the criminal dockets of the Court of Common Pleas of Mercer County in the case of Commonwealth v. Brian Fiedler, No. CP-43-CR-0000087-2008 available at:
http://ujsportal.pacourts.us/DocketSheets/CPReport.aspx?docketNumber=CP-43-CR-0000087-2008
(site last visited 8/26/2011).

[3]   To the extent that the Defendants cite to the Eighth Amendment standards for convicted prisoners as the controlling standard, in light of the Third Circuit's statements in Hubbard v. Taylor, 399 F.3d 150, the Court will utilize the standards of Bell.

Bell, 441 U.S. at 535 (citations omitted). However, jail officials may subject pre-trial detainees to "regulatory restraints" See id. at 537. In performing the analysis of whether a particular condition amounts to prohibited punishment or permitted regulatory restraint, a

> court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose. Absent a showing of an expressed intent to punish on the part of the detention facility officials, that determination generally will turn on whether [it has] an alternative purpose . . . and whether it appears excessive in relation to [that] purpose . . . . Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal-if it is arbitrary or purposeless-a court may permissibly infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees.

Bell, 441 U.S. at 538-39 (citations, brackets and internal quotations omitted). The Operative Complaint makes clear that the shackle restrictions were placed on Plaintiff after his assaultive conduct with the prison guards, which he is estopped from denying in light of his conviction for resisting arrest/law enforcement officials.[4] Thus, the Operative Complaint and the facts, which

---

[4] Plaintiff is collaterally estopped from denying the essential facts of his conviction, namely, that he acted "with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty, [and he] create[d] a substantial risk of bodily injury to the public servant or anyone else, or employ[ed] means justifying or requiring substantial force to overcome the resistance." 18 Pa.C.S. § 5104. Allen v. McCurry, 449 U.S. 90, 101 (1980); Anela v. City of Wildwood, 790 F.2d 1063, 1068 (3d Cir. 1986) ("The federal court, in determining the collateral estoppel effect of a state court proceeding, should apply the law of the state where the criminal proceeding took place"). Under Pennsylvania law, Plaintiff would be collaterally estopped from questioning the facts that support his conviction for resisting arrest/other law enforcement. M.B. ex rel. T.B. v. City of Philadelphia, 128 F.App'x 217, 226 (3d Cir. 2005) ("Furthermore, in Pennsylvania, 'criminal convictions are admissible in civil actions arising from the same operative facts and circumstances [and] these convictions are conclusive evidence of the criminal acts.'") (quoting Stidham v. Millvale Sportsmen's Club, 618 A.2d 945, 952 (Pa.

(footnote continued)

Plaintiff is collaterally estopped from denying, demonstrate that Plaintiff's placement in restraints when he was out of his cell served a legitimate penological interest, namely, preventing Plaintiff from engaging in such assaultive conduct when he was out of his cell. Hence, the Operative Complaint reveals that Plaintiff was not being "punished" within the meaning of <u>Bell</u>, but he was being properly treated in light of his risk of assaultive behavior. <u>Cf.</u> <u>Zimmerman v. Tippecanoe Sheriff's Dep't.</u>, 25 F.Supp.2d 915, 921 (N.D.Ind. 1998) (concluding that defendants' placement of inmate "with a propensity for escape attempts, in more secure housing without a hearing, and requiring that he wear leg irons when out of his cell, did not constitute punishment and did not violate his Fourteenth Amendment rights"). Hence, to the extent that Judge Fornelli as a member of the MCJ Board personally approved the use of such restraints on Plaintiff, the complaint fails to state a claim.

ii. Alleged Violation of Right to Due Process by MCJ Board

For the first time in his Response to the Judicial Defendants' Motion to Dismiss, Plaintiff alleges a different claim against Judge Fornelli. Specifically, he claims that Judge Fornelli and the MCJ Board violated his rights to due process when they transferred Plaintiff, a pre-trial detainee from the MCJ to SCI-Mercer which Plaintiff contends is contrary to <u>Cobb v. Aytch</u>, 643 F.2d 946 (3d Cir. 1981). One major deficiency with such an allegation is that Plaintiff did not make the allegation in the Operative Complaint but only in the Response. <u>Grayson v. Mayview</u>

---

Super. 1993)); <u>Harsh v. Petroll</u>, 840 A.2d 404, 444 (Pa. Cmwlth. 2003) ("Prior criminal convictions are conclusive evidence in subsequent civil actions arising out of the same incidents and concerning the same activity which was criminally prosecuted in the prior action.") (citing <u>Folino v. Young</u>, 568 A.2d 171 (Pa. 1990)). Hence, we need not credit Plaintiff's allegation that "the Mercer County Jail and Officer Steen and Lt. Yassim filed false charges for assault"
(footnote continued)

State Hospital, 293 F.3d 103, 109 n.9 (3d Cir. 2002)("For the sake of clarity,  a prisoner plaintiff (or any other plaintiff) should not be able effectively to amend a complaint through any document short of an amended pleading.").  Accord  Commonwealth of Pa. ex. rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").  This is true, notwithstanding the fact that Plaintiff is proceeding *pro se*.  See, e.g., McArdle v. Tronetti, 961 F.2d 1083, 1089 (3d Cir. 1992) (applying rule of Zimmerman v. PepsiCo. but the *pro se* litigant there was an attorney); Martin v. Zook, NO. CIV.A. 87-3775, 1988 WL 33919, at *3 n.6 (E.D.Pa. March 31, 1988) (applying rule of Zimmerman v. PepsiCo. to *pro se* lay plaintiff).

Even if we permitted Plaintiff to amend the Operative Complaint to include such an allegation against Judge Fornelli, his complaint would still be properly dismissed.  This is because Plaintiff has no absolute federal constitutional right not to be transferred from MCJ to SCI-Mercer.

Aytch, upon which Plaintiff relies, is inapposite here because it is distinguishable from the facts of the present case.  In Aytch, pre-trial detainees, among others, were transferred from jails operated by Philadelphia, which were located within the confines of Philadelphia, to five different State Correctional Facilities, the farthest of which was 300 miles from Philadelphia and the closest of which was 90 miles from Philadelphia.  Aytch, 643 F.2d at 949.  The Aytch Court found such distant transfers as were present therein to have violated a pre-trial detainee's Sixth Amendment right to counsel because of the difficulty the distance between counsel and the

---

concerning the January 2, 2008 incident.  ECF No. [10] at 3, ¶ 24.

transferred detainees caused as well as causing some delay in their speedy trial rights.  See id., at

957 ("the pretrial detainees enjoy the benefits of other constitutionally protected liberty interests

which were infringed upon by the transfers of those inmates to **distant** state facilities.  These

interests include the right to a speedy trial guaranteed by the sixth amendment.") (emphasis

added); id. at 960 ("We noted above the substantial interference with the right to effective

assistance of counsel resulting from pretrial transfer to **distant** places. We noted, as well, the

prolongation of pretrial detention which resulted from those transfers. The practice of

transferring unsentenced inmates seriously impinged upon their personal liberty as protected by

the speedy trial clause not only by prolongation of detention, but also by removing defendants

from proximity to potential witnesses.") (emphasis added).   Other courts have recognized the

absolute importance of the greatness of the distance of the transfers to the holding of Aytch and

the requirement that the distance have adversely affected some right of the pre-trial detainee.

See, e.g., Demeter v. Buskirk, No. Civ.A. 03-1005, 2003 WL 22139780  (E.D.Pa.,  Aug. 27,

2003).[5]

_____

[5]  In Demeter, the Court explained:

>    In *Cobb* [*v. Aytch*], the Third Circuit noted the district court's finding that
> the transfers of the pretrial detainees to distant prisons interfered with their right
> to effective assistance of counsel by removing them from potential witnesses and
> by interfering with what "counsel might have been able to do for them." *Id.* at
> 960. In *Cobb*, different classes of prisoners, including pre-trial detainees and
> convicted prisoners, were transferred from Philadelphia County prisons to five
> different Commonwealth correctional institutions, which were 200 miles, 120
> miles, 300 miles, 201 miles and 90 miles, respectively, from Philadelphia. Here,
> Philadelphia, where Plaintiff was transferred to, is approximately 77 miles from
> Easton, Pennsylvania, where he was transferred from.
>    Plaintiff has not shown any harm to his Sixth Amendment rights to
>                                                   (footnote continued)

In contrast to the facts of <u>Aytch</u>, in the case at issue, Plaintiff was transferred from the MCJ, which the Court takes judicial notice is now, and was, at the time of Plaintiff's confinement in November 2007 to July 21, 2008, ECF No. [10] at ¶ 16 & ¶65, located at 55 Thompson Road, Mercer, PA 16137-5637. The Court takes further judicial notice of the fact that SCI-Mercer is located at 801 Butler Pike, Mercer, PA, which is a total distance of 0.5 miles from MCJ.[6] There are no allegations that the transfer of Plaintiff from one location to another at a distance of less than one mile caused any violation of Plaintiff's constitutional rights. Accordingly, the Operative Complaint, even if construed to have been effectively amended by Plaintiff's new allegation in his Response, would still be subject to dismissal for failure to state a claim upon which relief can be granted. No allegation does, nor could, bring Plaintiff's case within the rule of <u>Aytch</u>, given the shortness of the distance between MCJ and SCI-Mercer.

2. The MCJ Defendants

Plaintiff's sole claims in the Operative Complaint against Warden Gill, Deputy Wardens Craig and Morganstern, (collectively, "the MCJ Defendants"), are those contained in Paragraph 25, quoted in full above, concerning their role in Plaintiff being shackled and handcuffed

---

effective assistance of counsel and a speedy trial resulting from the transfer, as is necessary for him to succeed on the merits. Plaintiff seems to argue that his presence in Philadelphia County rather than Northampton County necessarily affects his ability to prepare and present an adequate counseled defense. The distance of C.F.C.F., Philadelphia, in itself, however, does not provide a substantial likelihood of success on the merits of a deprivation of the rights secured to him by the Sixth Amendment. The distance between the prisons is only 77 miles and both prisons sit well within the Eastern District of Pennsylvania.

<u>Demeter</u>, 2003 WL 22139780, at *3.

[6] Directions and distance can be obtained at <u>www.google.com</u>.

whenever he left his cell. The same reasoning that justifies the dismissal of this same claim against Judge Fornelli, in his capacity as a member of the MCJ Board, applies equally to the MCJ Defendants insofar as there was a legitimate penological interest in having Plaintiff shackled and restrained while he was out of his cell given his assaultive conduct.

3. Deliberate Indifference Claim Based on Rash

Plaintiff appears to be attempting to make out a claim of deliberate indifference based on his allegations that he experienced a rash as a consequence of the requirement that he use restraints whenever he left his cell. ECF No. [10] at 3, ¶26. However, this claim fails as a matter of law.[7]

---

[7] Even if the Fourteenth Amendment's substantive due process standards provide greater protections to pre-trial detainees than the Eighth Amendment standards for convicted and sentenced prisoners, we find that, in light of the parties' arguments, which only contend for the applicability of the Eighth Amendment standard, see, e.g., ECF No. [50] at 14 to 18, any arguments that the Fourteenth Amendment's substantive due process standard for pre-trial detainees provides greater protections are waived. Hence, in light of the arguments of the parties, what the Court stated in Natale, applies equally here:

> As the issue was not raised before us, we do not decide whether the Due Process Clause provides additional protections to pretrial detainees beyond those provided by the Eighth Amendment to convicted prisoners. *See Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1188 n. 9 (9th Cir. 2002) (noting that "it is quite possible[ ] that the protections provided pretrial detainees under the Fourteenth Amendment in some instances exceed those provided convicted prisoners by the Eighth Amendment"). We have noted previously that the Due Process Clause provides "at a minimum, no less protection" than is provided by the Eighth Amendment. *Colburn v. Upper Darby Township*, 838 F.2d 663, 668 (3d Cir. 1988); *see also Simmons v. City of Philadelphia*, 947 F.2d 1042, 1067 (3d Cir. 1991).

Natale v. Camden County Correctional Facility, 318 F.3d 575, 581 n.5 (3d Cir. 2003). Accordingly, as in Natale, we too apply the deliberate indifference standard of Estelle.

"Deliberate indifference" occurs when a prison "official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). There is no specific allegation in the Operative Complaint that Judge Fornelli, the MCJ Defendants or the MCJ Board had any knowledge of such a rash and hence could not be deliberately indifferent to such a condition. But see ECF No. [10] at 3, ¶ 26 (Plaintiff "complained [to whom he does not say] and they refused to take the restraints off").

In his Response to the MCJ Defendants' Motion to Dismiss, Plaintiff alleged that the "defendants knew and were informed by medical [staff] that the Plaintiff was in fact allergic to the restraints placed upon him and they deliberately and willfully disregarded this information." ECF No. [53] at 1, ¶ 3a. The only problem with such an allegation is that Plaintiff did not make the allegation in the Operative Complaint but only in the Response, and he is not permitted to effectively amend the Operative Complaint by way of adding new allegations in his Response. Grayson v. Mayview State Hospital, 293 F.3d at 109 n.9; Commonwealth of Pa. ex. rel. Zimmerman v. PepsiCo, Inc., 836 F.2d at 181; McArdle v. Tronetti, 961 F.2d at 1089; Martin v. Zook, 1988 WL 33919, at *3 n.6.

However, even if we permitted Plaintiff leave to amend his complaint yet again in order to include this new allegation, the simple allegation in Plaintiff's Response is inadequate under Twombly and Iqbal to state a claim against Judge Fornelli and the MCJ Defendants. Bell Atlantic Corp. v. Twombly, 550 U.S. at 555 ("a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation

of the elements of a cause of action will not do[.]").  In performing our "context-specific task that requires the reviewing court to draw on its judicial experience and common sense" we find that even considering this new allegation, contained in Plaintiff's Response, "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, [and, so,] the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" <u>Iqbal</u>, 129 S.Ct. at 1950.   This is so for two independent reasons.

First, the use of restraints, inevitably causes some amount of discomfort or irritation and hence, their use, even if it causes a rash does not deprive the detainee of the "minimal civilized measure of life's necessities" as is required to establish the objective prong of a deliberate indifference claim. <u>Fuentes v. Wagner</u>, 206 F.3d 335, 345 (3d Cir. 2000).  <u>See</u>, <u>e.g.</u>, <u>Chambers v. Pennycook</u>, 641 F.3d 898, 907 (8th Cir. 2011) ("Handcuffing inevitably involves some use of force, and it almost inevitably will result in some irritation, minor injury, or discomfort where the handcuffs are applied.") (citations and internal quotations omitted);  <u>Tasby v. Cain</u>, 86 F.App'x 745, 746 (5th Cir. 2004) ("Tasby next asserts that his placement in the back restraints constituted deliberate indifference to his serious medical needs. He claims that the back restraints caused him to break out in a rash, that they prevented him from using his inhaler, that they prevented him from breaking his fall with his hands when he fell, and that they caused injury to his shoulders and back. His assertion that he suffered a rash as a result of the back restraints, however, does not establish that he suffered 'serious harm.'");  <u>McKeithan v. Beard</u>, Civ.A.No. 06-965, 2010 WL 2028091, at *4 (W.D. Pa.  April 12, 2010) ("Plaintiff's assertion that he developed a rash from being placed in restraints 'does not establish that he suffered serious harm.' ") (some internal quotations altered);  <u>Smith v. Schwartz</u>, Civ.No. 10-721, 2011 WL 2115831, at *3 (S.D.Ill. May

16

26, 2011) ("a prisoner's claim that he developed a rash from being placed in restraints does not establish that he suffered 'serious harm.'") (some internal quotations omitted).

Second, given that Plaintiff's rash was being treated with hydrocortisone in an attempt to alleviate the rash, ECF No. [10] at 4, ¶ 28, the Operative Complaint affirmatively rebuts the presence of a deliberately indifferent mindset. In light of the fact that Plaintiff's rash was being treated, Judge Fornelli and the MCJ Defendants could not be said to be deliberately indifferent to Plaintiff's rash. In other words, that Plaintiff's rash was being treated by hydrocortisone, renders it impossible for Judge Fornelli and the MCJ Defendants to be deemed to have "know[n] of and disregard[ed] an excessive risk to inmate health or safety" within the contemplation of Farmer. Hence, the Operative Complaint affirmatively rebuts the subjective prong as well. Accordingly, the Operative Complaint must be dismissed as against Judge Fornelli as well as against the MCJ Defendants.[8]

_____

[8] We do not rely upon the arguments made by Defendant Gill regarding Heck v. Humphrey, 512 U.S. 477 (1994), wherein he argues that any claim against Warden Gill concerning disciplinary charges is barred by Heck. ECF No. [50] at 13 to 14. Heck bars civil rights actions only where the challenge necessarily calls into question the validity of a criminal conviction or the length of a criminal sentence. Civil rights challenges to a disciplinary sanction imposed by a prison that has no necessary impact on the length of the criminal sentence (unlike, for example, the sanction of revoking good time credits, which do not exist in Pennsylvania) is not barred by Heck. Ramirez v. Galaza, 334 F.3d 850, 858 (9th Cir. 2003) (holding that "the favorable termination rule [of Heck] does not apply to § 1983 suits challenging a disciplinary hearing or administrative sanction that does not affect the overall length of the prisoner's confinement"); Jenkins v. Haubert, 179 F.3d 19, 27 (2d Cir. 1999) ("the Court has never announced that the Heck rule bars a prisoner's challenge under § 1983 to an administrative or disciplinary sanction that does not affect the overall length of his confinement."). Rather, the Court relies upon the fact that Gill's concurrence in placing Plaintiff in restraints did not violate any of Plaintiff's rights. See ECF
(footnote continued)

4.  Deliberate Indifference Claim Based on Alleged Lack of Mental Health Treatment

Plaintiff does assert another deliberate indifference claim in the Operative Complaint. Plaintiff alleged that he "asked for a mental health evaluation and he was approved but never seen [sic] a doctor."  ECF No. [10] at 4, ¶ 27.  Apparently, Plaintiff made this request around January 3, 2008.  See id., at ¶¶ 25 to 28.  Plaintiff was seen by a medical doctor at the beginning of April for an evaluation, and the physician gave Plaintiff the medication "Allivile" (Elavil?), but Plaintiff complains that he was still not able to see a psychologist or psychiatrist.  Id., at ¶ 48. In or around July 2008, Plaintiff is seen by a psychiatric nurse.  See id., at ¶ 54.  Later in July 2008, Plaintiff is seen by the psychiatric nurse again.  See id., at ¶ 59.

To the extent that Plaintiff claims that he was denied adequate medical/mental health care, Plaintiff is mistaken.  He was not denied mental health care rather, it appears that his mental health care was merely delayed.

The general rule is that "delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference which results in . . . harm." Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993); Sealock v. Colorado, 218 F.3d 1205, 1210 (10th Cir. 2000) ("Delay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in . . . harm.").  This is the rule in this Circuit.  See, e.g., Brooks v. Kyler, 204 F.3d 102, 105 n.4 (3d Cir.  2000) (the prisoner-plaintiff  "presented no evidence of any harm resulting from a delay in medical treatment.").  This is the same standard applicable to pre-trial detainees under the Fourteenth Amendment's substantive due process

No. [53] (Plaintiff making clear that he is complaining not about Defendant Gill's role in
(footnote continued)

18

standards.  Heard v. Sheahan, 148 F.App'x 539 (7th Cir. 2005) (Illinois inmate failed to show that

jail officials acted with deliberate indifference toward inmate's serious medical need in violation

of Fourteenth Amendment by delaying surgery for his hernia while he was in pre-trial detention,

where inmate presented no evidence that jail administrators knew that the delays they were

contemplating in scheduling surgery created a substantial risk of medical harm); Marshall v.

Penn Tp., NO. CIV.A. 08-90, 2009 WL 3241873, at *10 (W.D.Pa. Oct. 6, 2009) ("Where, as

here, the Fourteenth Amendment claim is based on delay in providing medical treatment, the

delay does not rise to the level of a constitutional violation unless it results in substantial harm.").

Plaintiff has alleged no substantial harm resulting from any delay between the time Plaintiff

requested a mental health evaluation, which request apparently occurred sometime between

January 3, 2008, ECF No. [10] at 3, ¶ 25, and February 3, 2008, id., at 4, ¶ 29, and the time he

actually was seen by a medical doctor, which occurred sometime in the beginning of April 2008.

Id., at 5, ¶ 48.

        Alternatively, because Plaintiff was in fact seen by a medical doctor who prescribed

Plaintiff medication to address his mental health issues and thereafter was also seen twice by a

psychiatric nurse, around July 2008, id., at 6, ¶¶ 54 & 59, none of the MCJ Defendants can be

considered deliberately indifferent to his mental health needs, knowing, as they did, that Plaintiff

was in fact, being seen and treated by medical professionals at least as of April 2008.

        The general rule is that where a prisoner has been examined and/or is being treated by

medical personnel, non-physician prison officials cannot be deliberately indifferent for failing to

---

disciplinary proceedings but about Gill's role in imposing the restraints).

intervene in the medical treatment.  <u>See</u>, <u>e.g.</u>, <u>Durmer v. O'Carroll</u>, 991 F.2d 64, 69 (3d Cir. 1993) ("The only allegation against either of these two [prison official] defendants was that they failed to respond to letters Durmer sent to them explaining his predicament.  Neither of these defendants, however, is a physician, and neither can be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor.") (footnoted omitted);  <u>Thomas v. Zinkel</u>, 155 F.Supp.2d 408, 413 (E.D. Pa. 2001) ("Prison authorities who are not physicians cannot be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor.  Similarly, health care administrators cannot be found deliberately indifferent when an inmate is receiving care from a doctor.")(internal citations and quotations omitted).  This rule makes sense because a non-physician layperson cannot be deliberately indifferent to a prisoner's medical needs when he knows that the prisoner was examined by and/or treated by medical personnel and/or receiving treatment ordered by medical personnel, notwithstanding the prisoner's complaints about the treatments because a non-physician layperson has no expertise whereby to judge the adequacy *vel non* of the medical personnel's treatment/examination.  Plaintiff has alleged nothing that would take this case outside of the general rule.  Hence, Plaintiff's claim of deliberate indifference under the Fourteenth Amendment fails to state a claim.

    5.  Conditions of Confinement Claim

    Plaintiff also complains about the conditions of his confinement, claiming that he was put in a "dry cell", where the water, including for the toilet, was controlled by staff outside of the cell.  Plaintiff was apparently placed in such a cell due to his behavior in pulling off a sprinkler

head in his previous cell and for flooding his previous cell twice. ECF No. [10] at 4 to 5, ¶¶ 37 to 40. Plaintiff was kept in this dry cell for one week in February 2008. Plaintiff was again placed in the dry cell in July 2008 after his cell was flooded again, which he claims he did not cause. Id., at 6, ¶¶ 55 to 63. Plaintiff was finally transferred out of MCJ to the State Correctional Institution at Forest, on July 21, 2008, apparently due to his behavior at the MCJ which was not capable of handling such an unruly detainee, and then Plaintiff was transferred from there to SCI-Mercer on August 5, 2008.

To the extent Plaintiff complains of the use of a dry cell in which to house Plaintiff, such use is clearly a "regulatory restraint" serving the legitimate penological purpose of preventing Plaintiff from flooding his cell at will as he had in the past. Hence, thus use of the dry cell was not a violation of Plaintiff's constitutional rights.

Moreover, to the extent that Plaintiff complains of the mere fact that he could not himself flush his toilet (or turn on and off his water at will) and was, allegedly, made to endure the smell for some period of time, does not, without more, adequately allege a violation of his rights under the Constitution, such as, absent an allegation that he requested the toilet to be flushed and was denied. See, e.g., Qawi v. Howard, NO. CIV.A. 98-220, 2000 WL 1010281, at *3 (D. Del. July 7, 2000) ("For example, in *[Smith v.] Copeland*[, 87 F.3d 265, 268 (8th Cir. 1996)], the Eighth Circuit Court of Appeals held that an inmate's confinement in a cell for four days with an overflowing toilet, during which time he was 'made to endure the stench of [his] own feces and urine,' did not rise to the level of an Eighth Amendment violation.").[9]

---

[9] There are other allegations contained in the Operative Complaint such as the alleged use of
(footnote continued)

In light of the fact that Plaintiff amended the original Complaint once already and even taking into consideration the new allegations Plaintiff made in his two Responses to the Motions to Dismiss, as if these new allegations effectively amended the Operative Complaint, because these new allegations do not state a claim upon which relief can be granted, the Court concludes that further amendment would be futile. See, e.g., Tillio v. Spiess, __ F.App'x. __, 2011 WL 3346787, at *1 (3d Cir. 2011) ("We conclude that the District Court did not abuse its discretion in dismissing Tillio's complaint for failure to comply with Federal Rule of Civil Procedure 8. **None of his submissions** to the District Court or to this Court reveals any factual or legal basis for a federal claim. Although a district court should generally give leave to amend prior to dismissing or making its own determination whether any amendment would be futile, *Simmons*, 49 F.3d at 87, we are satisfied—especially in light of Tillio's unclear appellate filings—that the District Court did not abuse its discretion by dismissing his complaint without leave to amend.") (emphasis added). Hence, the Operative Complaint should be dismissed as against the Judicial Defendants and the MCJ Defendants with prejudice.

6. The Mercer County Prosecutors

Plaintiff sues the District Attorney of Mercer County, Robert Kechems and the Assistant District Attorney, Ryan Bonner (collectively, "the Prosecutor Defendants"). In their Motion to

---

excessive force against Plaintiff when he refused to return his dinner tray to the guards, ECF No. [10] at 4, ¶ 32, and Lieutenant Yassim (who is not named as a defendant in this case) ordered Plaintiff to permit himself to be handcuffed and Plaintiff refused, and so Yassim used pepper spray on Plaintiff at the time. Plaintiff does not explain how any of the named Defendants were involved in this incident.

Similarly, Plaintiff complains of an allegedly false misconduct for assaulting a corrections officer, which Plaintiff asserts was merely horseplay. Id., at 5, ¶¶ 45 to 46. Again, Plaintiff fails

(footnote continued)

Dismiss, the Prosecutor Defendants raised the defense of absolute prosecutorial immunity. Prosecutors enjoy absolute immunity from Section 1983 suits seeking money damages for actions taken by the prosecutor that are "intimately associated with the judicial process." Imbler v. Pachtman, 424 U.S. 409, 430 (1976).

The sole allegation Plaintiff makes against the Prosecutor Defendants is that "District Attorney Ryan Boner put on record and threatened me that that [sic] if I file a writ of habeas corpus he would take away the current plea bargain and push for a 10-20 year sentence all because I tried to exercise my rights." ECF No. [10] at 8, ¶ 76. Plaintiff in his Response to the Motion to Dismiss, concedes that the Prosecutor Defendants are entitled to immunity and also concedes to have the complaint dismissed against them. ECF No. [53] at 1, ¶ 1. Even if Plaintiff had not so conceded, plea bargaining is most certainly among the acts considered to be "intimately associated with the judicial process" within the contemplation of Imbler. See, e.g., Cady v. Arenac County, 574 F.3d 334, 341 (6th Cir. 2009) ("Conduct associated with plea bargains has long been held by this court to be 'so intimately associated with the prosecutor's role as an advocate of the State in the judicial process' as to warrant absolute immunity."); Taylor v Kavanagh, 640 F.2d 450, 453 (3d Cir. 1981) ("The effective negotiation of guilty pleas would be severely chilled if a prosecutor were constantly concerned with the possibility of ruinous personal liability for judgments and decisions made at this critical stage of the criminal process."). Accordingly, the complaint must be dismissed against the Prosecutor Defendants with prejudice.

---

to connect any of the named Defendants to this incident.

7. The DOC Defendants

Plaintiff also named as Defendants the following Department of Corrections ("DOC") employees: (1) Jeffrey Beard, former DOC Secretary; (2) Michael Harlow, Superintendent of SCI-Mercer; (3) Fred Rufo, Deputy Superintendent; (4) Mr. Mahlmeister, Deputy Superintendent, (collectively, "the DOC Defendants").

In their Motion to Dismiss, the DOC Defendants point out that other than naming the DOC Defendants in the opening section of the complaint and explaining who they are, Plaintiff does not make any factual allegations against them. The DOC Defendants are correct. See, e.g., ECF No. [10] at 7, ¶¶ 66 to 74 (complaining of various conditions at SCI-Mercer but not explaining how any of the DOC Defendants were involved). Plaintiff filed an amendment to the original Complaint already. Plaintiff was given an opportunity to file a Response to the DOC Defendants' Motion to Dismiss to allege anything further he wished the Court to consider, yet Plaintiff did not file such a response to the DOC Defendants' Motion to Dismiss. In light of the foregoing, it is respectfully recommended that the Operative Complaint be dismissed against the DOC Defendants with prejudice because further amendment would either be futile or inequitable.

## III. <u>CONCLUSION</u>

Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, the parties are allowed to file objections by September 23, 2011. Failure to file objections by the required date will constitute a waiver of any appellate rights. <u>Brightwell v. Lehman</u>, 637 F.3d 187, 193 n.7 (3d Cir. 2011). Any party opposing objections may file their response to the objections in accordance with Local Civil Rule 72.D.2.

Respectfully submitted,

s/ Maureen P. Kelly
Maureen P. Kelly
United States Magistrate Judge

Dated:  September 6, 2011

cc:     Brian Fielder
        HB-1296
        SCI Camp Hill
        P.O. Box 200
        Camp Hill, PA 17001

        Counsel of Record via CM-ECF